Absolution Passion These are interesting cases this afternoon. I understand there's a big crowd in a different courtroom, though. Sorry that you don't have the audience that one of our colleague panels does. That is quite all right, Your Honor. Your Honor, my name is Laura Wynn. I'm here on behalf of the appellant, Marcus Hill. Your Honor, the result in this case is unfair and warrants reversal from this court because but for a plain guideline error resulting in a sentence at least 18 months above the correctly calculated guidelines, Mr. Hill will be released from prison in short order. The government has conceded the first three prongs, so I will direct my argument towards the fourth prong. That is whether this court should exercise its discretion to vacate and remand. What would have been his release date? You don't want the thing to be moved or something. That sometimes happens if we take too long. Yes, Your Honor. Currently, his release date is March 18th of 2019. But when would he, under your version of things, assuming he got a guideline sentence, I mean, what's the difference? Right now, as of December 16th of this year, he would have actually 29 months of actual custody, and I know the Bureau of Prisons would have to recalculate potential good time credit. So as of December of this year, he'd be at 29 months of actual credit, Your Honor. Counsel, both of you will have this problem. You both have cases you can use from our inventory on a fourth factor, and I don't know what we want from you other than obviously we have a very high standard in some cases and do not allow even year, year and a half differences to make a difference. And I don't think this case is going to be one that brings order to our disarray. So you're emphasizing to us, no doubt, the more important cases in a way maybe the government's view on this. If they want to concede anything of trying to straighten us out on this, that would be helpful. But I'm only saying that as we all recognize what we're facing here and give it your best shot. Thank you, Your Honor. And I will note that, yes, while relief on plain error is intended to be rare, this Court has acknowledged in United States v. John that whenever it's related to sentencing guideline error, this Court has been generous with remand, often finding these errors lead to substantial increases in sentences. And even though those errors were not raised into appeal and were thus subject to the plain error review, remand was merited. And it also goes to, Your Honor, whenever we look at the guidelines' overreaching purpose in our sentencing, going back to Rita from the Supreme Court, we want it to achieve uniformity in the sentences imposed by the district court for similarly situated defendants, as well as the proportionality in sentencing so that the system imposes appropriately different sentences for criminal conduct with different severity. And in this case, as this Court has discussed in John, the perception of fairness in Hill sentencing is marred by the fact the district court imposed a sentence without understanding that it had, in reality, chosen an above-guideline sentence and without its consideration of the correct guideline. And further, as laid out in Alano, the integrity of the proceedings below are at issue because correctly calculating the guidelines are a critical part of the judicial process that is protected by the fourth prong. Over the past few months, panels of this Court have encountered similarly situated defendants as such as Mr. Hill. In my 28J letter, I cited to two of those cases, United States v. Crenshaw that was handed down on August 7th and United States v. Brash that was handed down just a few weeks ago on November 6th. In both of those cases, the defendants had received offense-level enhancements for prior convictions of possession with intent to deliver, the exact same prior conviction as Mr. Hill. In Crenshaw, the discrepancy between the erroneous sentence and the correct guideline range was 24 months, and like here, the government had argued that relief was not warranted based off of Crenshaw's criminal history and his recidivism. In Brash, the defendant was originally sentenced as a career offender, and so the disparity between his incorrect and the correct guidelines were higher than they are here, and the range was 100 months in the difference. In both those cases, the Court vacated and remanded. This Court protected the fairness and integrity of the proceedings below by sending both cases back to the district court to determine the appropriate sentence based upon all of the facts and the correct guideline before it, and that's what this Court should do in this case. How would you distinguish a February case published when Terri Martinez, which is the same mistake as exists in the other cases you're talking about? Are you familiar with that case? Yes, Your Honor, and I would just say that whenever— I think you're more familiar with it than I am. I apologize for putting it that way. No, that is quite all right, Your Honor. And, yes, in comparison to that case, whenever we're looking at the error, in this case post-Tanksley that came out in January, and that these defendants were not given the opportunity to avail themselves of the prevailing law at the time, I would just say whenever you look at the particular facts and the degree of error in this case, the minimum of an 18-month difference in the guideline range between the incorrectly calculated guideline range and the correct guideline range, that Mr. Hill warrants relief in this case. And— Did the Court find or comment that there were any proclivities of recidivist behavior, like were in Renteria-Martinez, or comment that offenses were committed while on probation and that this recidivism would be a reason that— Any kind of comments like that? Or is there anything present in your clients in the sentencing that would be similar to Renteria-Martinez? Or those were present in Renteria-Martinez as the reason that the error was not corrected? That is correct, Your Honor. We are actually in an opposite situation as Renteria-Martinez, because, in fact, in this case, whenever you look at the record from pages 128 to 129, the government's entire argument for a higher sentence for Mr. Hill was entirely based upon his criminal history. The district court specifically said that while it did not disagree with the government in regards to his criminal history, it found that his criminal history was adequately reflected by his criminal history category. Further, the court went on to say that it found that the guidelines adequately reflected the seriousness of his offense conduct, as well as other statutory sentencing factors, and saw no reason to vary from the guidelines, and, in fact, found that a midpoint of the guidelines was adequate in this case to meet all the sentencing factors. So in comparison to those other cases, Your Honor, we do not have language from the judge here that he intended, that it intended for Mr. Hill to have a higher sentence based upon his criminal history or chances of recidivism, and, in fact, he expressly stated against that. And Crenshaw also supportive of your position? Yes, Your Honor, and that is the case that I mentioned a few minutes ago. In United States v. Crenshaw, it was a very similar case to this, and, in fact, the difference and the disparity in the guidelines. In this case, from the top end of the guidelines, we're looking at 18 months up to 21 months for the midpoint of the guidelines. And why I bring up the midpoint of the correct guidelines, which is 21 months, which is similar to that in Crenshaw of 24 months, is that whenever the government urged for the higher sentence at sentencing, the district court expressly declined to do so and said that he found that the midpoint of the guidelines was more than appropriate in this case. And the government, of course, is, again, advancing Mr. Hill's criminal history as a reason for this court not to grant relief. And while recidivistic behavior and criminal history is a factor that plays into this court's decision in its analysis, it should not substitute its view for that of the district court that has had the opportunity to view that criminal history and to fully consider it whenever it decided to impose its sentence. Further correction of this will give the district court an opportunity to properly discharge its sentencing rule because it's going to allow that sentencing court for the first time to make a discretionary determination necessary to arrive at the appropriate sentence. And remand for resentencing is going to protect the fairness and integrity of the underlying proceedings because it's going to afford that deference in respect to the district court judge to ensure that he has all the correct facts and the properly calculated guideline in front of him to ensure an accurate sentence. So we should do exactly what we did in Crenshaw, is what your argument is? Absolutely, Your Honor. I don't know where Elrod was on that panel, as I bet you know. Yeah, I did know that, Your Honor, yes. But whenever you look at the degree of the error in this case, the 18 to 21 months, there are, as you mentioned, Judge Southwick, we have quite a repertoire of cases that we can pull from, the same as the government can otherwise. But this court has remanded several cases within the similar disparity range as Mr. Hill, including Crenshaw from August. I'm going to butcher the name of this one, Mukaney from 2011. There was a disparity of 19 months. United States v. John from 2010, that court vacated and remanded for a disparity of 21 months, and it specifically said because that error resulted in a significant sentencing disparity. And finally, United States v. Price, there additionally there was an 18-month disparity. And as Justice Gorsuch stated in his concurring opinion in Hicks, who wouldn't hold a rightly diminished view of our courts if we allowed individuals to linger longer in prison than the law requires because we are unwilling to correct our obvious mistakes. And we submit that here there is a clear and obvious mistake that was made down below, and Mr. Hill will be staying in prison longer than the law requires if this — So the fourth factor serves no purpose if that's all that the law requires. And we've made it clear that the fourth factor is supposed to have some teeth to it. So staying in prison longer than a properly calculated guideline might require, we have left in place. I guess our standards of what would hold us up to ridicule is maybe lower or higher than you're suggesting. But mere error is not enough. Don't you agree? That is absolutely correct, Your Honor. All right. Can you give me that site again for Justice Gorsuch? It's in the Supreme Court case of Hicks v. United States. And I'm afraid I don't have the exact — Not the site. It's the Hicks v. United States. United States. That's correct, Your Honor. And that's the case that subsequently came back down here to the Fifth Circuit and was vacated and remanded in October this year after plaintiff review. And going into the facts in particular of Hicks, he was an individual that was facing a mandatory minimum 20-year sentence. But there was a change in the statutory scheme, and so he was remanded back down to district court. And finally, going towards Judge Southwick, as far as the fourth prong in this court being able to exercise its discretion, an appellate's court's discretion is at least going to be cabined by some guiding principles. And this is coming from United States v. John. And that's going towards the precedent that we do have in place in our circuit and perhaps other circuits. And that is when there's been no indication that the district court would have selected the sentence regardless of the guideline range that does apply and the sentence is imposed based upon the erroneously calculated guidelines, it's appropriate to exercise this court's discretion to vacate the sentence and remand the proceeding, at least when the sentence is going to have materially or substantively been above the properly calculated range. How do you distinguish Ruiz-Dominguez? Yes, Your Honor. Regarding Ruiz-Dominguez, it's in the government's 28-J letter. In that case, it was an illegal reentry case, an immigration-based case. And when the panel declined to exercise its discretion, that was based upon the defendant's 16 convictions and 10 unadjudicated arrests. However, some of those unadjudicated arrests were related specifically to his recidivism. That is, he had been arrested by immigration officials and been deported without having faced any prosecution. Additionally, two of those convictions were for immigration-related offense. In this case with Mr. Hill, he does not have any recidivism as it relates specifically to gun offenses. Whenever you look at his criminal history on pages 154 through 161 of the record, there is no indication that he's ever had a gun in his possession during the commission of any of his prior convictions. So whenever you're looking at the particular facts under the fourth prong in the degree of error, we believe that Mr. Hill's case is distinguishable from Ruiz-Dominguez as set forth by the government. And there's no reason to believe that this case, if it was before the district court again with the correct guidelines, that he would not be sentenced to a substantially lower sentence and would, in fact, likely be released from prison. It's not that he's doing the same offense exactly because it's not a gun offense that he commits over and over. Is that what your distinction is? That's part of the distinction, Your Honor. Whenever you're looking... He commits a lot of offenses. They say in the transcript that he's committing an offense every six months. Isn't that right? That is correct, Your Honor. And that he's got a lot of victims. I mean, he does have a recidivism issue, doesn't he? He does have a criminal history, Your Honor. But as was discussed at the district court below, those are all the exact same reasons that the government advanced for a higher sentence under the guidelines, and the district court handled that information in front of him and determined that a high guideline sentence was not appropriate and that the criminal history was adequately reflected and that a mid-guideline sentence was appropriate. And, Your Honors, I see that I'm about out of time, so I would reserve my remaining five minutes for rebuttal, and we ask for you to vacate and remand. Thank you. Are you here to give us a standard we can apply with more consistency than the one we have done so far? Absolutely, Your Honor. Brian McKay on behalf of the United States. I would, acknowledging there's some divergence in the Fifth Circuit decisions, I would ask the Court to return to what the Supreme Court has said. In its seminal plain error decision in Puckett, the Supreme Court explained two aspects of the fourth prong that are especially relevant here. First, when a court is being guided on whether to exercise its discretion, it's guided by the specific facts of a particular case. There's no formula. There's no one single criterion, like a discrepancy in the guideline range in the sentence, that dictates whether to exercise discretion. And the second thing that Puckett made clear is that when we look at those specific facts that guide discretion, we can, in some instances, see circumstances, as were present there, where it would actually be counterintuitive, where it would undermine the fourth prong considerations to exercise discretion. That was the case in Puckett, where Justice Scalia, writing for the seven justices, said, look, as a general matter, it would always call one to question the integrity of the system when the government breaches a plea agreement. That's true in every instance. But here, when we are guided by the specific facts of the case, as in Puckett, what the Court saw was that there was a defendant who continued to engage in criminal behavior during the pendency of his case. So, using Justice Scalia's words, said it would be ludicrous, and I will dial it back a little bit and say it would compromise the goals of the fourth prong, to say in that instance, when a defendant continues to engage in criminal behavior, to then send it back to the district court and tell the district court to consider lowering the sentence for, of all things, acceptance of responsibility. Did Mr. Hill engage while he was, like in Puckett? This is not that situation, is it? It is, Your Honor. There are two things about this case that when we take what the Court instructed in Puckett and apply it here, there are two aspects of this case that make this similar. First is that when we look at Mr. Hill's case, we see, granted, at the first and second prongs, there was legal error. I'm not disputing that at all. I'm asking, did he commit offenses while he was awaiting his trial or his – Not that I'm aware of. Or during the pendency, like you just described in Puckett. Not that I'm aware of. On those facts, what I am saying is that the error there was that the government failed to breach the plea agreement because it didn't recommend the acceptance reduction. Here, when we look at the error, the error, as Tanksley tells us, was that Mr. Hill was treated as – given an enhancement for someone who deals drugs when, in fact, legally speaking, we look at his conviction, and that statute of conviction could have theoretically supported a conviction had Mr. Hill simply offered, made a bald offer to sell drugs, having never possessed them and not genuinely intending to follow through on that offer, just made a bald offer. Theoretically, his conviction would have been supported by that, and that was error at the first and second prong. But again, it's the facts that guide the fourth prong, this Court's discretion. And when we look at the facts, as Flores in footnote 3 tells us we do, those facts show that Mr. Hill was not a bona fide victim of any error. The guideline says that this enhancement applies for someone who has been previously convicted of dealing drugs. Mr. Hill was found in a motel room with more than 16 grams of cocaine, scales and almost $1,000 in his pocket. He was not convicted under a theoretical application of the Texas Delivery Statute. So harkening back to Puckett, Justice Scalia would say it would at least compromise the goals of the fourth prong to send it back to the district court and say, you sentenced him under an enhancement that applies to drug – people who have been convicted of dealing drugs. And although we know under the facts that he was convicted for dealing drugs, that was still legal error and you have to re-sentence him. But we do that all the time. Not all the time. But many times – on the Byzantine rules that we have to apply about these hypothetical situations as opposed to the real situations. We're always doing that in these cases. This Court is always applying the categorical approach. Were this – were this a preserved error and I was arguing harmless error to this court, I understand that would – that would hamper my effort. But on the fourth prong, this Court is not tied. In fact, this Court is instructed by Henderson and by Puckett to look at those facts. I think just – Okay. Also, isn't Tanksley the continuing thread through all these cases? I don't know what the facts were of Crenshaw, which is now president, but nonetheless. You seem to be saying whenever we have this error, the fourth prong won't be satisfied so long as it's a technical defect under Tanksley and not a real what would the public think defect. Is that, in my clumsy way, a fair characterization of how you see it? It's part of it. It's not the – there is not one thing that influences or controls this Court's discretion. That is one of the things. In the two cases that – Do you know the facts of Crenshaw? I mean, I don't. I'm not – this isn't a test. Yes, and I'm glad – glad to discuss them. I mean, does it fit what you're saying about our case? Absolutely. Absolutely. I – what I – the Court in Crenshaw did not, I believe, take into consideration the underlying facts of Crenshaw's delivery or possession with intent to deliver. But I assume that Crenshaw really was, in the real sense of what he did, subject to the higher sentence. It's just a technical aspect of it. But that's the same problem that we have here, and your argument ought to make a difference from Crenshaw. Now, again, I know Crenshaw is not President, though a very capable set of judges decided it. That's – that's part of it. But Crenshaw, the – what the Court in Crenshaw said was his extensive criminal history, which they considered, but still, in light of the extensive criminal history, still sent it down to the district court for resentencing. That extensive criminal history – I had a chance last night to actually look at it – four criminal convictions, including one assault that was 20 years before the instant offense, two drug crimes, and one misdemeanor evading arrest. That pales in comparison to the criminal history that Mr. Hill has amassed, where over a period of those 20 years, he has amassed 14 criminal convictions, half of them assaults, and at least six of those brutal assaults against four different women in his life. That, this Court is not blind to and should not shut its eyes to. One of the – But then the department may be perspective. It's one thing that we're supposed to make sure the public doesn't – isn't concerned about an injustice in the system. But the district judge already was aware of that and said he thought that the improperly calculated guidelines sufficiently took it into account. Is that accurate? That's – that's accurate based on the guideline range that the Court had calculated. So the erroneous one he thought was properly reflected, and maybe he wouldn't think the correct one would properly reflect it. But it does seem to me the district judge was fully aware of his – of the criminal history that we're talking about here. And it's very worrisome that he picked a guideline sentence after thinking the guidelines took everything properly into effect. Two points, if I may, Your Honor. Certainly, again, if I was arguing to this Court that the guideline error was harmless, then that is something that may very well doom that argument. But we're, again, in – in plain error in a world where in Puckett the Court said meeting all four prongs is difficult as it should be. And in Escalante-Reyes, that is a stringent standard to satisfy. And as proof that the district court's comments, even tying to a mid-range sentence, don't insulate the – the error against fourth prong is that it's Flores. I would submit that this Court's decision in Flores, cited in my brief from 2015, is the best analogy, the most analogous case to these, where in that case the district judge explicitly found that a sentence at the bottom of the guideline range should be applied. A sentence of 56 months, slightly higher than the one present here. The discrepancy between the low end of the guideline range there and the sentence imposed was much greater than here. It was 32 months. And the Court there looked at the very same two things that I'm asking the Court to look at here. One, which is there it was a guideline error because the defendant had a prior assault. And the Court said, look, even if his assault as a legal matter didn't qualify as a crime of violence, didn't require the use of force, we look at the facts of his case and we see that he actually did use force. He punched a woman in the head. That, coupled with the second issue, which is his history of recidivism, and the Court was persuaded that there was no need to acquit the fairness or integrity or public reputation of judicial proceedings in that case because, after all, he had a second domestic violence conviction. So on his two domestic violence assaults, this Court, and given the fact that there really, he was not truly the victim of a legal error under the guideline as a factual matter, setting aside the first and second prongs as a legal matter, because he was a recidivist and twice committing a domestic battery, this Court declined to require the district court to fix even a larger error. The thing that sets this case apart from those as far as what he's done and what he's been convicted for is the subsequent decision in Taxley that it's not a conviction for possession with intent to deliver. And that changes the entire basis of the sentencing. Well, I don't believe so. In Flores, there was error as well. The error was the treatment of a prior conviction. I think the Court assumed it, but the treatment of a prior conviction is a crime of violence when they assumed it was not a crime of violence. And even in that situation here, it would be treating a prior delivery conviction as a controlled substance offense, even though as a factual matter it was, legally it could not be treated in that way. It didn't change, I don't believe, the complexion of the 50, 35, 50. It changed the applicable law. It changed the guidelines. It did change the applicable law. But in Ruiz-Dominguez, there was error from the beginning. The error was using the wrong guidelines range. That error resulted in a different guideline range. And even there, again, in facts comparable to here, where there was even a higher sentence, an even larger discrepancy between the guideline range and the sentence imposed, and a comparable criminal history persuaded this Court not to exercise its discretion. I would submit to the Court that Ruiz-Dominguez and Herrera have two sides to a coin that are both present here and both were present in Flores. In Herrera, the Court looked at what I'm asking the Court to consider first, that, yes, there was guideline error, but the facts of the case, which, again, we are not blind to at the fourth prong. In fact, not only are we not blind to it, the Supreme Court has told us that those facts are what control the Court's discretion. When we look at those facts, we see that the guideline, although at the first and second prong could not be imposed, what that guideline intended to sweep in, to capture, is exactly what this defendant did in Herrera. And that alone was enough to persuade the Herrera Court not to exercise its discretion. In Ruiz-Dominguez, there was error, but it was his criminal recidivism that persuaded the Court not to exercise its discretion there. In both Flores and in this case, we have both. We have, there was no, as a factual matter, there was the behavior that he, the conduct that he engaged in is precisely what the guideline intended to capture. Now, it happened to come through a statute that was overbroad. And on, as in Ruiz-Dominguez, in Flores and in here, I don't have to go on about Mr. Hall's recidivism. It's serious and brutal history. And as I think Your Honor had pointed out, when we look at those facts, when we drill down, we verify that the periods in which he wasn't committing crime, a lot of that is accounted for because he was serving 180 days, 300 days in jail. And that, I think, explains why, a large part of why he wasn't picking up additional offenses. Kennedy. Well, you've not talked much. I mean, there's so many cases to discuss. I'm not faulting that. You've not talked much about Renteria-Martinez. It seems to me that that was primarily a problem with the State court records that did not actually say he was convicted. The actual judgment didn't say a conviction with intent to deliver or whatever the missing piece was. But otherwise, the records show fully that that's what Renteria-Martinez had done. And the judgment did not reflect that. But then the court went on to consider his, I'm not sure I can pronounce all the syllables, recidivistic behavior in other ways. Is Renteria-Martinez different than this case because it has something in it that we don't? I mean, if we, I mean, it is a Tanksley case. It is a case in which the court looked at the facts and decided he really was guilty of intent to deliver. But he could not be given the enhancement. Is it different in some way? I don't think so. But when we put all the, it is, the facts of it, of any case, are going to be unique. And when we take the totality of the facts here, according to what the Supreme Court has told us in Puckett and in Henderson about the fourth prong being a protection against opening the floodgates to plain error corrections, what we see is that when we have cases that are truly analogous, and just as I was saying, where there are not just one, but two things that push in favor of affirming, the fact that the way the guideline was applied was legally, now we know from Tanksley, incorrect. But the facts of the case show that the guideline enhanced behavior that as a factual matter we know to be true. And coupling with that, which wasn't present in Crenshaw, certainly wasn't present in Brass. Brass, I know, is another case that is relied on there. The discrepancy was 100 months. The discrepancy was two-thirds of the sentence imposed, which is precisely not what we have there. And I suspect that's why the government acceded in saying that the fourth prong weighed in his favor. Nor was there the presence, by all accounts, of recidivism that would caution against exercising discretion. So we have to figure out here if we believe that Crenshaw was a good data point. And it doesn't have to be a good data point because it's an unpublished case. But if it's a good data point, we have to figure out if the criminal history is similar in Crenshaw to the criminal history here because they have the other two. The sentence is similar length difference and the legal issue is the same. Presumably the facts of Crenshaw, presumably Crenshaw was also actually engaged in drug dealing. It's not clear from Crenshaw. I don't know that. But assuming that to be the case, then yes. And one of the things that distinguishes Crenshaw is that as this Court has held consistently, even if the Court has ultimately determined to remand for resentencing, criminal recidivism does matter. And I would submit I've looked at... It was not rejected with respect. It wasn't rejected. It was acknowledged that that is a consideration. But in Crenshaw, the Court was unpersuaded that it withstood, that there was no need to remand. They acknowledged that it was extensive criminal history. And as I've mentioned to the Court, to call that extensive, that wholly pales in comparison to what Mr. Hill has been able to accomplish over 20 years of brutally brutalizing the women in his life. And we know from the facts at least four of those, and in particular I'm talking about in paragraphs 35, 37, 39, and 40, from just the objective facts in the PSR, four of those should have been felony offenses because he acknowledged the essential elements of the offense, of actually committing the assault. And we know from the PSR that he committed those offenses after he had been finally convicted of a prior assault. So it should be undisputed that four of those should have been resolved as felonies. He had the benefit. I don't know if it was lenient plea bargaining or whether the multiple victims he had simply were unwilling to cooperate and testify against him. But he had the benefit of that, and that is proven by the objective facts in the PSR. What Mr. Crenshaw, what he was able to accomplish with his two felony and two misdemeanor convictions wholly pales in comparison. And I have yet to see a case involving such serious, violent recidivism and public safety risks where this Court has simply brushed it aside and not acknowledged that and accounted for that. You wouldn't be brushing it aside were the Court to choose to remand for resentencing, would it, Mr. McKay? I understand. I apologize if the Court would take that as an accusation on my part. And, in fact, the District Court would be free to consider that all and be open to whatever sentence the District Court believed was appropriate considering the appropriate factors of that which would be one of. Absolutely, Your Honor. I would ask that the Court not send it back for the District Court's consideration instead of firm the judgment. Thank you. Thank you. Thank you, Your Honors. As an initial matter to go to what you just mentioned, Judge Elrod, is that if this case does go back to the District Court for resentencing, then the District Judge will have, with his correctly calculated guidelines in front of him, be able to make a fresh determination based upon all of the factors, including Mr. Hill's criminal history, whether, once again, that particular guideline sentence is warranted. And we would just reiterate the fact that, in this case, the District Court did have all of these factors regarding Mr. Hill's criminal history in front of it. It was brought forth through the government's argument at sentencing, and the criminal history category will not change whenever it goes down below. The District Court said, even in light of all of the convictions that Mr. Hill does have, that, according to the District Court, his criminal history was adequately reflected by that criminal history category. But that means that the Court could do a variance and get right back to the same sentence if the Court believes that that's really where he belongs, based upon his criminal history. Yes, Your Honor, the Court could do so. However, in its statements down below, it did say that, at the time, it felt that the criminal history category and the criminal history guidelines were, in fact, adequate, and it saw no reason to vary. But it was adequate at that level. If it's the lower level, it may see a reason to vary. And I'm not suggesting what the Court should do. That doesn't mean that it's not a severe criminal history, though, does it? No, it does not, Your Honor. So the question is, are you aware of any of our cases where we have had someone with this kind of criminal history get pronged for relief? I don't know in regards to the specifics as to the exact convictions that Mr. Hill has had in his past. However, I will just note that whenever you're looking at the correctly calculated guidelines, their central role in that play into sentencing means that any error in those guidelines whenever they're calculated is very particularly serious. And then if that district court does improperly calculate the defendant's guideline range, then the district court has committed a significant procedural error, and this is going to give the court an opportunity to correct that error and exercise its deference because the district court does have the breadth of experience in sentencing individuals, and it does see these cases all the time and has the opportunity to observe the defendant, to hear the defendant's allocution, see the character witnesses presented on behalf of the defendant, to decide under all of the sentencing factors what is an appropriate sentence for that defendant, and would just once again say that, yes, he does have a criminal history. Many individuals that do appear in front of this court do so as well. What's been argued is that he has a particularly violent criminal history and it would not offend our sense of justice to allow this sentence to remain. That's the argument made by the other side. Your Honor, his criminal history is but one of the factors to be considered by this court in determining whether or not to correct this error and to exercise its discretion to vacate and remand. And we would just say that his criminal history in the light of his actual convictions, that is best left for the district court to determine if, and as he said before, it was adequately reflected. The situation and the circumstances that led to his criminal history score and led him in front of that court had been considered before and will do so again. Do we have a lot more of these cases pending that are going to come down the pipeline? I don't have a number for you, Your Honor, as far as what may be pending on appeal post-Tanksley. But hopefully since the case was decided in January, these guidelines are now correctly being applied in the district court. And we will just say that does go towards the uniformity of applying the sentencing guidelines. And the sentencing is that Mr. Hill will not be afforded the same uniformity that is intended by the sentencing guidelines because his case was decided before Tanksley came out in January. And we would submit that he should be afforded the opportunity to have the benefit of the significant shift in the criminal jurisprudence that we've had in this circuit. And we would ask for your honors to vacate Mr. Hill's case and remand it for resentencing. Thank you. We have your arguments. We appreciate your arguments today. Thank you, Your Honor. And the case is submitted.